UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT LOWELL DUREN,<br><br>Defendant. | Case No. 4:25-cr-00010-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Robert Lowell Duren's Motion to Dismiss (Dkt. 6). The Court will deny the motion.

Duren's motion is premised on the fact that he was arrested on federal charges on January 17, 2025 but was not brought before a federal magistrate judge until March 4, 2026—nearly 14 months later. Duren contends this delay violates Rule 5 of the Federal Rules of Criminal Procedure and his Sixth Amendment right to a speedy trial. The government contends there is no violation because Duren was in state custody during all but a few days due to pending state charges.

As will be explained below, the Court concludes that Duren was arrested on federal charges on January 17, 2025. But it does not need to decide whether Duren thereafter remained in federal custody or whether the federal government

relinquished primary custodial authority to the state during the ensuing months. Even assuming Duren's view of that issue is correct, dismissal is not warranted under Rule 5 or the Sixth Amendment.

## FACTS

On January 14, 2025, a federal grand jury returned an indictment charging Duren with two counts of distributing fentanyl and one count of possession with intent to distribute methamphetamine. At that time, Duren was facing numerous charges in four pending Idaho state cases, all of which had been brought between July and October 2024. A summary of the state cases is shown here:

- *Case No 1 – CR10-24-6993*. On July 26, 2024, Duren was charged with felony and misdemeanor possession of a controlled substance. He posted a $30,000 bond.

- *Case No. 2 – CR10-24-9852*. On October 10, 2024, Duren was charged with felony possession of a controlled substance. He posted a $15,000 bond.

- *Case No. 3 – CR10-24-10374*. On October 25, 2024, Duren was charged with trafficking in fentanyl, possession of a controlled substance, and possession of drug paraphernalia.

- *Case No. 4 – CR10-24-10441*. On October 28, 2024, Duren was charged with multiple counts of possession of a controlled substance and possession of drug paraphernalia. On October 31, 2024, he posted bond relative to the latter two cases—$30,000 in Case No. 3 and $50,000 in Case No. 4.

On January 17, 2025—three days after the grand jury returned the federal indictment—an Idaho Falls police officer encountered Duren at a laundromat and

MEMORANDUM DECISION AND ORDER - 2

arrested him. Duren was transported to the Bonneville County Jail and during a search conducted at the jail, officers discovered a pill later identified as fentanyl. Duren was thus booked on state charges that included possession of a controlled substance. On that same date, the United States Marshals Service lodged a federal detainer with the jail. Within a few days of Duren's January 2025 arrest, a bail agent executed certificates of surrender at the Bonneville County Jail relating to Duren's four pending state cases.

Over the ensuing months, Duren remained in custody at the Bonneville County Jail while his federal case and his five state cases remained pending. The state cases were resolved between February 2025 and February 2026. Specifically, the state charge arising from the January 17, 2025 arrest was dismissed in February 2025. A second state case (No. CR10-24-6993) was dismissed in April 2025, and the remaining three cases were dismissed in January and February 2026. Case No. CR10-24-9852 was dismissed on January 16, 2026; Case No. CR10-24-10374 was dismissed on February 4, 2026; and Case No. CR10-24-10441 was dismissed on February 26, 2026.

A federal defender was appointed to represent Duren in March 2025—early into that 14-month period between January 2025 and March 2026. On March 2, 2026, roughly a year after Duren's federal counsel was appointed, the United States Marshals Service served Defendant with the federal arrest warrant. Two

days later, Duren made his initial appearance in federal court. In the run up to Duren's appearance in federal court, Duren's federal defense counsel requested and received discovery from the government. *See Response,* Dkt. 25, at 4 (indicating that the government sent discovery to Duren's counsel in October 2025).

## ANALYSIS

Duren contends that the delay between his January 17, 2025 arrest and his March 4, 2026 initial appearance violated his rights under the Sixth Amendment and Federal Rule of Criminal Procedure 5(a). He says each violation independently warrants dismissal of the indictment.[1] The Court is not persuaded.

### A.   Sixth Amendment – Barker Analysis

Under the Sixth Amendment, "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court identified four factors for assessing whether the right has been violated: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. "None of these four factors are either necessary or sufficient, individually, to support a

---

[1] Duren also raised a claim under the Speedy Trial Act, but he abandoned that claim on reply. *See Reply,* Dkt. 30, at 10.

finding that a defendant's speed[y] trial right has been violated." *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008) (citing *Barker,* 407 U.S. at 533). Instead, these factors "must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

### 1.    The Length of the Delay

The first *Barker* factor, the length of the delay, is a threshold issue. *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003). Duren must show that the delay, typically measured from indictment to trial, "passes a threshold point of 'presumptively prejudicial delay.'" *Id.* If he makes that showing, the Court proceeds to the remaining three *Barker* factors. *Id.* (quoting *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993)). There is no bright-line rule, but delays of around one year are generally found to be presumptively prejudicial. *Id.*

Here, Duren points to the 412-day[2] delay between indictment and his initial appearance. This is sufficient to trigger the *Barker* inquiry. Still, though, this length is not excessive and, accordingly, does not weigh heavily in Duren's favor. *See id.* (22-month delay between indictment and trial did not weigh heavily in the

---

[2] For the sake of completeness, the Court notes that it calculates the period between January 17, 2025 and March 4, 2026 as 411 days (not 412). That discrepancy does not impact the analysis.

defendant's favor); *United States v. Tanh Huu Lam,* 251 F.3d 852, 857 (9th Cir. 2001) (although an approximate 15-month delay was long enough to trigger *Barker* inquiry, it only "militate[d] slightly in Lam's favor"); *United States v. Beamon,* 992 F.2d 1009, 1014 (9th Cir. 1993) (17-month and 20-month delays were not "great").

### 2.  The Reason for the Delay

The Court next considers the reason for the delay. Crediting Duren's assertion that he was in federal custody this entire time, the reason for the delay is simply stated: The government believed Duren was in state custody because Duren had pending state charges, he had been arrested on a new state charge, and the bail agent had issued surrender certificates. Certainly, this is not a case in which the government delayed the proceedings to gain a tactical advantage, impair the defense, or simply delay for the sake of delay.

Duren suggests that the government attorney was negligent in failing to bring him before a magistrate, but from the government's perspective, counsel was waiting for the federal warrant to be executed and was operating under the assumption that Duren was in state custody. This was entirely consistent with the fact that a new state charge had been filed; several other state felony cases remained pending; the bail agent had executed surrender certificates; and the United States Marshals Service had lodged a detainer.

To support his negligence argument—and his more specific argument that the government "never checked" the constitutional speedy trial clock—Duren points to an email exchange in which the prosecutor stated she had "'not reviewed his [Duren's] case in awhile since he hasn't been brought into our custody.'" *See Reply*, Dkt. 30, at 11 (citing Defense Ex. 8). But that characterization is incomplete. Read in context, the prosecutor was responding to defense counsel's inquiry regarding whether the government intended to seek a superseding indictment—not whether Duren should be brought before a magistrate judge. Thus, the email does not suggest that the government had ceased monitoring the case or forgotten about Duren. Rather, it reflects the government's understanding that Duren remained in state custody and that the federal case would proceed after resolution of the state matters.

In short, this record shows that the reason for the delay resulted from the unusual custodial posture created by the federal arrest, the new state charge, the pending state charges, the surrender certificates, and the federal detainer. Certainly, the record does not show deliberate delay, bad faith, or tactical manipulation by the government. Nor does the Court find that the delay was caused by governmental negligence. Under these circumstances, the "reason-for-the-delay" factor does not weigh in Duren's favor.

MEMORANDUM DECISION AND ORDER - 7

### 3. Duren's Assertion of His Right to a Speedy Trial

The third *Barker* factor considers Duren's assertion of his rights. The record reflects that Duren did not take any steps to assert his right to a speedy trial between January 2025 and March 2026. He contends he cannot be faulted for his inaction, however, given that he "had no forum in which to object." *Reply,* Dkt. 30, at 12. He also says that "even if [he] had done nothing, the government's argument would fail" because the government has a constitutional duty to bring him to trial. *Id.*

The Court is unpersuaded. First, Duren's threshold argument that he had no forum in which to object is circular, given his insistence that he was in federal custody the entire time. Second, Duren had federal counsel by March 2025. Thus, he could have filed a motion seeking some form of relief during the intervening months. Third, while the government has a constitutional duty to bring defendants to trial, this step of the *Barker* analysis requires the Court to consider what, if anything, the defendant did to assert his rights during the period of delay. Although defense counsel communicated with the government regarding the federal case, neither Duren nor his counsel sought judicial relief regarding the alleged Rule 5 or Sixth Amendment violations. Accordingly, the third factor weighs in the government's favor.

### 4. Actual Prejudice

The fourth factor is whether Duren suffered actual prejudice as a result of the delay. As noted above, the Court already concluded at the threshold that Duren is entitled to a presumption of prejudice. But "presumptive prejudice is simply 'part of the mix of relevant facts, and its importance increases with the length of the delay.'" *Gregory*, 322 F.3d at 1162 (citing *Beamon*, 992 F.2d at 1013). Actual prejudice is typically demonstrated in three ways: (1) oppressive pretrial incarceration, (2) the defendant's own anxiety and concern, and (3) the possibility that the defense will be impaired because of the delay. *Doggett v. United States* 505 U.S. 647, 654 (1992).

#### a.     *Impairment of Duren's Defense*

The Court will begin with Duren's third asserted reason—that his defense has been impaired because of the delay. Duren has failed to demonstrate any such impairment. He has not identified any witnesses, evidence, or legal defenses he will be unable to present because of the delay. Instead, he relies on generalizations and rhetoric. For example, he says, "It is difficult to measure the precise evidence lost or the witness memory that faded over 412 days" and that his "inability to participate in his own defense for over a year is prejudice to the defense." *Reply,* Dkt. 30 at 14. He does not offer any details or specifics. Further, this argument is undermined by the fact that he requested and received discovery in the fall of 2025.

MEMORANDUM DECISION AND ORDER - 9

b.    *Oppressive Pretrial Incarceration*

As for oppressive pretrial incarceration, Duren says he served nearly 14 months in a county jail "with limited programming, limited recreation, and limited access to services." *Id.* at 13. But, once again, Duren's argument is thin and generalized. He does not offer specifics regarding what programming, recreational, or rehabilitative programs were (or were not) offered, instead saying only that they were "limited." He also says his grandmother died while he was in jail, and that he lost his job, his housing, and his car. These are unfortunate but common collateral consequences of incarceration.

It's also worth noting that this Court routinely recommends that defendants receive credit for time served in federal custody. Here, assuming Duren was in federal custody—and that he did not receive credit against any other sentence—the Court would recommend credit for time served. Other courts have noted that "though time alone may, in some cases, rise to the level of oppressive pretrial incarceration, credit for time served mitigate[s] the potential oppressive effects of . . . incarceration." *Hakeen v. Beyer,* 990 F.2d 750, 762 (3d Cir. 1993) (internal quotation marks and citation omitted).

c.    *Anxiety and Concern*

In terms of anxiety and concern, Duren says he was anxious and concerned because he was sitting in county jail on federal charges and nobody explained why.

He says that "[o]ver the course of his detention," which spanned roughly 14 months, "he repeatedly wrote jail officials trying to understand why he was being held and what was happening with his case" but "[h]e never got clarity." *Reply, Dkt. 30, at 13.*

The record does not bear out this assertion. It shows that Duren reached out to jail staff once in January 2025. He inquired about his federal charges, why he was in custody, and why he couldn't be released on bond. *See Defense Ex. 5,* Dkt. 30-5, at 1 ("Can you please give me any info on the hold I have avoiding my being able [t]o bond. Such as what my charge is, where the alleged crime was committed, how long do they have to hold me, etc. …???"). The same day, Duren received the following response, explaining that he remained subject to state charges and that the federal warrant would be served once those matters concluded:

> "[Y]ou have a federal hold. When you are done with your local charges they will serve the [federal] warrant on you and transport you to a federal facility. After that, you will be arraigned. Currently, the only information you have is you have a federal hold. There is nothing stopping you from bonding on your local charges if/when you have a bond, but at that point, the US Marshals will be notified that you are ready for pickup."

*Id.* After receiving that response, the record does not reflect any queries from Duren for the next 11 months. Then, in late 2025 and early 2026 (as his pending state cases were nearing resolution), Duren asked a number of questions regarding his charges and why he was being held, particularly given that he had previously

posted bond on his four pending state cases. *Id.* at 2. Jail staff responded, letting him know that the bond on his four state cases had been revoked and that he would be held until those cases had been discharged. Duren was also informed, again, that "[t]he US Marshal Service will not take possession until the local charges have been resolved. [A]t that point they may serve their warrant and the federal court process will begin." *Id.* at 5-6.

This record does not support Duren's contention that he remained in custody for 14 months without any understanding of why he was being held or when his federal case would begin.

Duren also argues, more generally, that he suffered "the anxiety and concern that accompany public accusation." *Reply,* Dkt. 30, at 13. This claim is undermined by the fact that the federal warrant was not formally executed until March 2026. Moreover, Duren already faced several active state felony prosecutions, one of which arose from overlapping conduct. During the relevant period, Duren was litigating those state cases. Trial dates were repeatedly scheduled, counsel appeared on his behalf, motions were filed, and the state cases continued to move toward resolution. Under these circumstances, the anxiety attributable specifically to the delayed federal proceedings is difficult to meaningfully distinguish from the anxiety accompanying Duren's existing state criminal matters.

Considering all these circumstances, the Court finds the "anxiety and

MEMORANDUM DECISION AND ORDER - 12

concern" factor neutral. At best, this factor would weigh slightly in Duren's favor, but not enough to make a difference in the overall balancing of the *Barker* factors.

More broadly, after considering all of the *Barker* factors outlined above, the Court concludes that dismissal of the indictment is not warranted.

## B.    Rule 5

Likewise, the Court is not persuaded that Duren is entitled to dismissal based on the alleged violation of Rule 5 of the Federal Rules of Criminal Procedure. Rule 5 requires that a person arrested on a federal charge be brought before a magistrate judge "without unnecessary delay." Fed. R. Crim. P. 5(a)(1)(A). The rule is triggered when a defendant is arrested or detained for a federal offense. *United States v. Gowadia*, 760 F.3d 989, 993–94 (9th Cir. 2014).

Based on the plain language of Rule 5, Duren was arrested on federal charges on January 17, 2025. As such, he should have been taken before a magistrate judge "without unnecessary delay."

The normal remedy for a Rule 5 violation is suppression of statements made during the delay. *United States v. Dominguez-Caicedo*, 40 F.4th 938, 950 (9th Cir. 2022). If, however, the defendant has not made any incriminating statements during the delay—and the violation is "particularly egregious,"—dismissal is an available remedy. *Id.*

Here, Duren does not identify any confession, admission, or other

incriminating statement obtained during the period of delay. Accordingly, the ordinary remedy of suppression is unavailable. Duren therefore urges the Court to conclude that the delay itself—spanning 411 days between January 17, 2025 and March 4, 2026—rendered the Rule 5(a) violation "particularly egregious" and warrants dismissal of the indictment.

Again, the Court is not persuaded. Duren's argument focuses almost exclusively on the length of the delay while giving insufficient consideration to the surrounding circumstances that produced it. Although the duration of the delay is significant, length alone does not determine whether a Rule 5(a) violation is "particularly egregious" for purposes of dismissal. Rather, courts considering dismissal in the absence of suppressible evidence have examined not only the length of the delay, but also whether the defendant's continued incarceration was attributable solely to the Rule 5(a) violation and whether the defendant likely would have remained incarcerated even absent the violation. *See, e.g., United States v. Osunde*, 638 F. Supp. 171, 177 (N.D. Cal. 1986).

For example, in *United States v. Osunde*, 638 F. Supp. 171, 177 (N.D. Cal. 1986), the district court emphasized that dismissal may be appropriate where the delay is "egregiously lengthy" and where the defendant's detention resulted directly from the Rule 5 violation itself. *Id.* At the same time, the court distinguished circumstances in which a defendant likely would have remained in

custody regardless of the presentment delay. *Id.* That distinction is important here. Duren contends that the Rule 5(a) violation was the sole reason for his incarceration during the relevant period. As discussed above, however, the record reflects that Duren was also subject to multiple pending state criminal cases during that time and that a bail agent executed certificates of surrender in Duren's four pending state cases. Although the parties dispute the legal effect of those surrender certificates, their existence nevertheless demonstrates that Duren's custodial status cannot be attributed solely to the alleged Rule 5(a) violation.

This circumstance materially distinguishes the present case from those in which dismissal has been deemed an appropriate sanction. Indeed, it's worth noting that in *Bayless v. United States*, 381 F.2d 67 (9th Cir. 1967)—a case where the Ninth Circuit concluded that the district court had "correctly denied" a motion to dismiss the indictment for a Rule 5(a) violation—any prejudice the defendant suffered was minimal since he would have been in prison even absent the Rule 5(a) violation. *See United States v. Melendez*, 55 F. Supp. 2d 104, 108 (D.P.R. 1999) (discussing *Bayless,* observing that the Ninth Circuit "did not mention that the prejudice the defendant suffered by the Rule 5(a) violation was minimal since he still would have been in prison but for the Rule 5(a) violation"). Duren is in a similar position. Indeed, even if he had successfully bonded out on his state charges, and as the government persuasively pointed out during the hearing on this

MEMORANDUM DECISION AND ORDER - 15

motion, Duren would have been detained on the federal charges. Thus, as in *Bayless*, any prejudice attributable specifically to the Rule 5(a) violation was limited because Duren almost surely would have remained incarcerated even in the absence of the violation.

In sum, the Court concludes that although the presentment delay in this case was lengthy, the surrounding facts demonstrate that any Rule 5(a) violation was not "particularly egregious" within the meaning contemplated by *Dominguez-Caicedo* and related authority. Accordingly, dismissal of the indictment is not an appropriate remedy.

**ORDER**

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss (Dkt. 6) is **DENIED**.

2. Defendant's Motion for Leave to File Excess Pages (Dkt. 29) is **GRANTED.**



DATED: June 15, 2026

_____
B. Lynn Winmill
U.S. District Court Judge